The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms with some modifications the Opinion and Award of the deputy commissioner.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Defendant-employer regularly employs three or more employees and is subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed on the relevant dates herein.
3. Key Risk Management Services, Inc. is the workers compensation insurance administrator for defendant.
4. The date of the alleged accident by specific traumatic incident to plaintiffs back is 5 January 1998.
5. The date of onset for the alleged occupational disease for his alleged bilateral shoulder condition is 8 January 1998.
6. Plaintiffs average weekly wage on the relevant dates was $435.47. This wage yields a compensation rate of $290.33.
7. Plaintiffs last date of employment with defendant was 21 January 1998, the date of his termination.
8. The issues presented are whether plaintiff sustained a compensable injury by accident and/or contracted a compensable occupational disease, and if so, to what indemnity and medical benefits is plaintiff entitled.
************
 RULINGS ON MOTION AND EVIDENTIARY MATTERS
Introduced and admitted into evidence are stipulated exhibit one, plaintiffs medical records; plaintiffs exhibit one, a letter dated 21 January 1997 from the employer to plaintiff; and defendants exhibit one, plaintiffs personnel file. Defendants motion to strike in part an affidavit of plaintiff has been granted. Accordingly, paragraphs three and four of plaintiffs affidavit dated 15 February 1999 are not allowed as evidence in this case.
Plaintiffs motion to consider additional evidence or, in the alternative, to allow a new deposition to be taken is DENIED.
************
Based upon all of the competent evidence of record, the Full Commission adopts in part and modifies in part the findings of fact of the deputy commissioner and enters the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was forty years old. Plaintiff has a ninth-grade education, and his work experience has consisted primarily of working in cabinet shops where he has constructed and installed cabinets.
2. Plaintiff, who was employed by defendant for several months in 1992, was a helper on a truck and assisted in the installation of cabinets. While he had occasional complaints of pain, plaintiff was able to perform this helper job in 1992 without missing time from work due to any injuries or back or shoulder problems.
3. Prior to 5 January 1998, the date of the alleged injury giving rise to this claim, plaintiff had occasional back and shoulder problems. Plaintiff was treated by a chiropractor on 12 February 1990 for severe lumbar pain, and again in September 1991 for acute right shoulder spasms. In late 1996 and early 1997 plaintiff returned to the chiropractor for treatment for low back pain. Prior to 5 January 1998 plaintiff was last treated by the chiropractor on or about 25 January 1997.
4. Plaintiff was treated by his primary care physician, Dr. Jack V. Scott, on 1 April 1996 for back pain.
5. On 22 November 1996 plaintiff was evaluated by Dr. Dols, an orthopedic physician, with complaints of right hip and leg pain. Dr. Dols indicated this condition may have been caused by a herniated nucleus pulposus at L4-5 or L5-S1. Degenerative changes and bone spurs were noted.
6. In July 1997 plaintiff applied for a position with defendant and was hired. Plaintiff returned to work for defendant on 21 July 1997 building and installing cabinets. On 5 January 1998 plaintiff and a coworker were installing cabinets at a medical facility. After installing the base cabinets, which were about three feet high, plaintiff and his coworker began to install wall cabinets. The wall cabinets plaintiff and his coworker were installing were approximately four feet long and were installed about five feet high. Two employees were needed to lift and hold the wall cabinets, which weigh about ninety pounds. Lifting the cabinet to the wall involved quick motions. One employee fastened the cabinet to the wall with screws.
7. On 5 January 1998, plaintiff and his coworker bent over to pick up a cabinet that they were going to install. When they lifted up the cabinet and placed it against the wall onto the braces, plaintiff, who was holding his side of the wall cabinet at shoulder level, felt a pop and immediate pain and burning in his back. Plaintiff dropped his end of the cabinet.
8. Shortly after the incident occurred, plaintiff informed his boss that he had hurt his back while installing the wall cabinets. Plaintiffs coworker then took plaintiff to plaintiffs family physician, Dr. Scott. Dr. Scott referred plaintiff to Dr. Tsahakis, an orthopedic surgeon, who first evaluated plaintiff on 9 January 1998. At this appointment plaintiff complained of low back pain and bilateral shoulder pain.
9. Dr. Tsahakis prescribed anti-inflammatory medication, a CT scan, exercises, and work restrictions on 9 January 1998. The CT scan was performed on 27 January 1998 which showed severe spinal stenosis at L4-5 and a small herniated disc at L3-4. Spinal stenosis is a narrowing of the nerves of the spine. X-rays taken that same day showed plaintiff was also suffering from discogenic sclerosis, which is a hardening of the inplates around the disc which causes ongoing irritation of the disc. Dr. Tsahakis ordered a bone scan which confirmed this latter diagnosis. Dr. Tsahakis took plaintiff completely out of work as of 27 January 1998.
10. Following the lifting incident of 5 January 1998, plaintiff returned to work the next day and attempted to work in defendant-employers shop at light duty. Plaintiff did not work on 8 January 1998 but he returned to work on 9 January 1998 and continued to work in the shop until 19 January 1998 when he had an increase in symptoms after being assigned to his regular heavy lifting duties. Plaintiff has not worked in any capacity since 19 January 1998.
11. On 3 February 1998 Dr. Tsahakis recommended surgical intervention because conservative treatment had proven unsuccessful. On 13 March 1998 Dr. Tsahakis performed an bone graft fusion to treat plaintiffs discogenic sclerosis and a L4-5 decompression to treat plaintiffs herniation and spinal stenosis. Dr. Tsahakis also removed ruptured disk on the left at the L4-5 level. Plaintiffs herniation contributed to his spinal stenosis.
12. Plaintiff obtained good results from the fusion and decompression surgery, and on 2 September 1998 Dr. Tsahakis released plaintiff to return to work after two physical therapy sessions with restrictions of no repetitive bending, lifting, or twisting, and no lifting greater than thirty-five pounds. This release and the restrictions pertained to plaintiffs back condition.
13. Dr. Tsahakis was of the opinion that the lifting incident sustained by plaintiff on 5 January 1998 could or might have caused plaintiffs L4-5 disc to herniate and could or might have materially aggravated plaintiffs underlying preexisting degenerative conditions in plaintiffs back. The Full Commission finds based on the greater weight of the evidence that plaintiffs L4-5 disc herniation was caused by the 5 January 1998 lifting incident at work and that plaintiffs pre-existing degenerative back condition was materially aggravated by the same lifting incident.
14. Dr. Tsahakis expected plaintiff to reach maximum medical improvement for his back condition in early November 1998; however, plaintiff last treated with Dr. Tsahakis on 2 September 1998 and was never rated.
15. On 2 September 1998 Dr. Tsahakis referred plaintiff to Dr. Barron, an orthopedic surgeon who specializes in shoulder surgery for treatment of plaintiffs shoulder pain. Plaintiffs shoulder complaints were bilateral, with the right worse than the left. At this initial evaluation Dr. Barron prescribed a home exercise program. Plaintiff then saw Dr. Barron again on 20 October 1998, and at this evaluation x-rays showed that plaintiff had bilateral impingement and significant bilateral positive AC joint arthrosis (degeneration). Dr. Barron gave plaintiff bilateral injections at this appointment. Plaintiff did not return to Dr. Barron for further treatment. Dr. Barron did not take plaintiff out of work.
16. While plaintiffs job as a cabinet maker and installer could have played a role in plaintiffs impingement and arthrosis, this job did not place him at an increased risk of contracting these problems as compared to the general public. Further, these shoulder conditions are not characteristic of and peculiar to the trade of cabinet making/installing.
17. On 5 January 1998 plaintiff was performing his job in his normal, customary manner when he lifted and held the wall cabinet to the wall to be installed; therefore, any injury he may have sustained to his shoulder was not due to an accident.
18. While plaintiff had preexisting back problems, his pre-existing back condition had never been significant enough to render him unable to work. The lifting incident of 5 January 1998 rendered plaintiff unable to work at full duty from 9 January 1998 through 19 January 1998. Thereafter, from 20 January 1998 through 2 September 1998, plaintiff was unable as a result of his injury to earn wages in any employment. As of the date of the hearing before the Deputy Commissioner on 31 July 1998, plaintiff was not employed in any capacity and had not been employed since 19 January 1998.
19. Dr. Tsahakis released plaintiff to return to work with restrictions on 2 September 1998. Plaintiff has not had an opportunity to present evidence that he has made reasonable efforts to find suitable employment after 2 September 1998 or that his disability continued after 2 September 1998 because this case was heard on 31 July 1998 and the record remained open only for medical evidence and the testimony of one lay witness previously allowed by the deputy commissioner.
************
Based upon the foregoing stipulations and findings of fact, the Full Commission conclude as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his back arising out of and in the course of his employment on 5 January 1998 as a direct result of a specific traumatic incident of the work assigned when he and a coworker lifted a wall cabinet for installing and he felt immediate pain in his back. Plaintiffs herniated disc at L4-5 was caused by his 5 January 1998 lifting injury and his pre-existing degenerative back condition was materially aggravated by the 5 January 1998 lifting injury. N.C. Gen. Stat. 97-2(6).
2. Plaintiff did not sustain a compensable injury by accident to his shoulders as a result of the lifting incident of 5 January 1998. N.C. Gen. Stat. 97-2(6).
3. Plaintiff did not contract a compensable occupational disease to his shoulders as a result of his job as a cabinet maker/installer. N.C. Gen. Stat. 97-53(13).
4. As a result of the compensable back injury sustained by plaintiff on 5 January 1998, plaintiff was totally disabled from 20 January 1998 through 2 September 1998. The record contains no evidence on whether plaintiff made reasonable efforts to find suitable employment or remained disabled after 2 September 1998 because plaintiff had not been released to return to work at the time this case was heard before the deputy commissioner. The record should be reopened to allow plaintiff to present evidence on this issue.
5. As a result of the compensable back injury sustained by plaintiff on 5 January 1998, plaintiff is entitled to medical compensation that tends to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. 97-2(19) and 25.
6. Plaintiff is not entitled to medical compensation for his bilateral shoulder AC joint arthrosis and impingement. N.C. Gen. Stat. 97-25.
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff total disability compensation in the amount of $290.33 per week beginning 20 January 1998 and continuing through 2 September 1998. Such benefits that have accrued shall be paid in a lump sum. This award is subject to the attorneys fee awarded below.
2. Defendant shall pay for all medical treatment for plaintiffs compensable back injury.
3. Counsel for plaintiff is entitled to a reasonable attorneys fee of twenty-five percent of the amount awarded herein to plaintiff. Twenty-five percent of the lump sum awarded to plaintiff in paragraph one above shall be paid directly to plaintiffs counsel.
4. Defendant shall pay the costs due this Commission.
 ORDER
The record in this case is REOPENED for additional evidence on whether plaintiffs disability continued after 2 September 1998, when plaintiff reached maximum medical improvement and whether plaintiff has sustained any permanent partial impairment as a result of his compensable back injury. This case is REMANDED to Deputy Commissioner Amy Pfeiffer for further proceedings.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
BSB:md